and may it please the court, Eric Brignac for Lance Whitaker. We asked this court to vacate the district court's order and to remand to a new district judge for reconsideration. The district court made two separate errors, either one of which would justify vacating the order and remanding it. First, it gave a worse result or effectively a higher sentence after Mr. Whitaker's successful appeal. Secondly, it misunderstood one of the material facts underlying Mr. Whitaker's motion, which was the government's response to that motion. There was the presumption and the appearance of vindictiveness in this case. The Supreme Court has pointed out that understanding- yes, your honor. There's a pretty high barrier to reach to change judges if we were to vacate and remand. I look back at the sentencing line in this case, and if I'm correct here, Mr. Whitaker started with a guideline range of 360 years to life, which the district court did not Your honor, the difference between- the reason it is- the difference between the first motion and the second motion wasn't the 240 months. It was the 10 years of supervised release had been reduced to 8, and then the second time up here, as we're up here now, those 8 were increased again to 10. And the supervised release, your honor, is something that this court can look at in terms of vindictiveness. Do you have a case from anywhere, ever, where a change in supervised release was a grounds for finding of vindictiveness by the district court judge? I do not, your honor, but this court's case in the United States v. Ketter, 908 F. 3rd, 61, has established this circuit joining the majority of circuits to say that sentencing is unitary. So the supervised release term is part of the sentence. It is not conceptually correct to look at it as separate from the term of imprisonment. Also Austin v. Plumlee cites multiple instances beyond just the new trial. We have parole boards that increased parole after there was an appeal, and the court said that, citing other circuits, saying that can lead to a finding of the presumption and the appearance of vindictiveness. Because what Alabama v. Smith did said, look, this isn't going to be mathematical. There was an argument that any time you get a higher sentence on remand, that must be reversible, that violates due process. Then there were some other cases, and I think the Supreme Court crystallized in Alabama v. Smith and said, no, we're not worried about the numbers. The whole point of this was the appearance of vindictiveness. Somebody exercises a legal right, a legal right to appeal, be it a guest trial. Can I ask a question? The judge here does give a fairly full explanation for why he was not reducing the 240 months and was, as he said, staying with the 10 years. Could a judge do that? So put aside whether it was done here. Could a judge say, listen, last time I went to 240 in eight years, and I did so a little hastily because I'm doing a bunch of these. I now have gotten this guy back on remand. I've taken a closer look at his criminal history, his failure to comply with his obligations in prison, whatever it is, all information that was before me last time, but I just didn't think hard enough about it. But now that I have it before me today, I think really hard about this, and based on all of this information, I really think he needs 10 years, not eight. If the judge did that, do you agree that would overcome whatever presumption might exist and that the court would be fully entitled, even though all that information was available before the eight years was imposed, the court could totally do that if it explained itself fully enough? I think, in your honors hypothetical, that could be the case, I think, in... What do you mean by could? So what about that would be a problem? I hesitate to say I would want to read what exactly the district court said in that instance, compare it, but yes, I do think it is possible for a district court to say, I am now considering something that I just missed, and I'm forgetting... Not that I've missed. No, no, I don't want to say that, right? What I'm saying is, listen, I had all this information before, but we're doing these re-sentencings based on the various changes in the law, and when I had it before me before, I don't recall doing it, but I thought eight years was enough. Now that I have it before me again, afresh, I'm looking at the same information, but my best judgment, even though it's the same information, I'm not saying I just missed something, but I'm giving it more considered judgment. My judgment today is this 10 years. I might have a harder time if a judge says, nothing has changed, all of the evidence was before me before, all of the arguments were before me before, and I'm simply just giving this more consideration, I might have trouble saying that that does not at least give the appearance of vindictiveness, which is all we need. My point is that that would, not about presumptions or whatever the hell that is, but that overcomes whatever presumption might exist, right? Because he says, listen, court, you told me that I have to give him a new sentencing, and a new sentencing requires that I consider it anew. That's the very point of a new sentencing, and I'm doing that, and I recognize that in considering it anew, I've come to a slightly different answer, right? But that's the nature of discretionary sentencing. And if he explained all that, then we wouldn't, it's not that this is, that would overcome whatever presumption, if any, existed, right? Yes, though here, the district court, you know, we obviously. That's where I want to go next. You're right. All right. So, so yes. Tell me why the explanation in the joint appendix, where he goes through and talks a fair bit about your, you know, terrible criminal, not yours, sorry, your client's, terrible criminal conduct, serious criminal record, poor performance on probation, the need to promote respect for the law, incapacitate Whitaker, the court declines to change his supervisor's release from 10 years. Why isn't that enough, is what I'm getting at? Three reasons, your honor. First, when he, when he did the first motion, United States versus Martin had come out from this court. It was clear that the court already had to consider all of that in the first motion. Second. Is this the motion where the case then went up to our court and then went on re, which, which motion are you talking about? I'm talking about the first 404 motion, your honor, where the district court did not apply what we now call the chamber's rule. We appealed asking this court to apply chambers. The government agreed chamber should apply and agreed, filed a motion for a remand. So that motion, what I was, that's what I described, but anyway, go ahead. When we filed that motion, your honor, if you look at the reply, we filed joint appendix 91 to 96. If you look at the government's response, joint appendix 60 to 61, we were already hashing out these 3553A factors and at joint appendix 64, the gov, the one page order, the district court issued for that first motion indicated that it was considering the 3553A factors. So the reason this case differs your, right, but, but not, but it doesn't say that it considered, I'm not going to quote him again, right, but the terrible, awful, serious, whatever things that he described here, right? It doesn't specify those things, right? It just says generically. Yeah. Yeah. I consider it 3553, but here he's telling us exactly what he considered that led to this conclusion. Well, your honor, I, I think a rule saying a court's mere invocation of 3553 doesn't allow this court to assume that a district court applied 3553A would have downstream effects. No, no. We've already said that, but that's the whole blue line of cases, right? You can't just cite 3553. You have to address every non-frivolous argument that is given, right? We've already said that just invoking 3553 without more means nothing. And we have a lot more in this case, your honor. The parties made 3553A arguments again, I pointed to those joint appendix sites. The district court had to consider them under the law. And I guess the point I want to get to and where this really differs from your hypothetical- If that had been an original sentencing, right? Do you think a judge saying I consider 3553 full stop would suffice under our case law? It would not, your honor, but these were, this was not an original sentencing. This was a section 404 as your honors aware of. And I guess the point I really want to say where this really comes away from your hypothetical is I believe, if I'm not mistaken, in your hypothetical, your honor said, you know, initially I gave him eight. I am now considering things in a deeper, more fundamental way than I did before. And I think he really deserves those 10. He did not say that here. Everything he said was in justification of effectively going from 276 to 240. He didn't say anything to explain- So that's the fundamental problem here as you see it, is that in terms of the two years differential and supervised release, there wasn't a sufficient explanation. Is that your point? It goes, it goes deeper than that, your honor. Not only did he not say anything, which is a problem, but there's nothing he could have said. There was no post sentencing conduct by Mr. Whitaker. There was no information that was unavailable to the district court between the first and the second motion. No, no, but you, you agreed early, I'm sorry, but you agreed earlier that you could reconsider based on the same information. It doesn't have to be new information, right? That's discretionary sentencing. It just needs to be considered. It doesn't have to be new information in order to raise someone's sentence. But it does, your honor, if you're going not, not from 276 to 240, I agree with you there. It does, however, to justify that two year difference, there has to be something of, it's not me, it's either the Supreme Court has said, this court has said something must affirmatively appear on the record and yes, something must affirmatively appear, appear on the record, but it doesn't have to be new. It doesn't have to have happened since the, since the prior sentence, but it just has to be something that was not apparently considered the first time. Right. And we've got all that here. I mean, he's, he's got a whole list of things here that he didn't give before. And I guess your honor, where I disagree as a factual premise is to say that the district court did not consider those. He went from 276 to 240. He made a substantive change. So the record shows that the district court did consider those factors. So I think where you and I disagree and where I respectfully disagree is the factual premise or assumption that what he was relying on when he gave this more fulsome order wasn't something he already relied on, even though he didn't write it down. I saw Judge Quattlebaum. Did you have a question? I was, I was kind of getting to the same point, so I, you know, I don't have anything else. Okay. Sorry. I just didn't want you to miss that. No, no. I appreciate it. And you know, this obviously, that all gets to the questions of vindictiveness, your honor. The other point we raised is that the district court. Why wouldn't this just be a very simple case about lack of explanation for the 10 years as opposed to eight years? This, your honors. The vindictiveness to me just seems like you've stretched way above anything that's reasonable. And it's really a very simple case. And if you have one, that's more of an amended blue type problem. And that is certainly a way that this court could conceptualize this case. You know, I can tell your honors that a lot of that vindictiveness, you know, it was driven by the appearance. You know, whatever members of the general public are paying attention to Lance Whitaker's case are basically Lance Whitaker and his family. And that was very much their first reactions upon getting this second order, you know, calling me, talking to me about that. But I totally understand why this court may not want to reach the vindictiveness issue. But even then, there still needs to be a remand. Because as your honor pointed out, there would be a problem with the explanation between going from eight years to 10 years. The problem, and the problem I also want to say, and I don't think this is just a practical question. And this is just my curiosity. So why in this scenario, why did you not file a motion to reconsider? After this came out, why bring this to us as opposed to bring it to the judge's attention and say, hey judge, by the way, in our prior motion, we didn't mention that you did this because we want four years, not eight years. But you previously gave us eight, you just gave us 10, and you didn't really explain yourself super well on why that is. Like it looks a little bit like a Scrivener's error. Like can you clarify? Why not? Yes, your honor. We, Rule 35, Rule 36 motions, we tend to file those. Those tend to be most appropriate. If say you have an oral sentencing hearing, then a written judgment, you compare the transcript to the judgment, you realize, oh, you know, the court had a hearing, the court said X, and you know, it wrote Y. But here, you could do it here, right? And like you showed, like what I'm trying to understand is like, why are you bringing this to, I mean, I don't mean this in a bad way. Why not just go to the judge and say, hey, like this doesn't seem to make a lot of sense? Because your honor, it was a, as your honor has pointed out, a somewhat thorough order. It did not, on the face of it, appear to be a Scrivener's error, did not appear to be something where the district court didn't realize what it was doing and wrote an 8 when it meant to write a 10 or wrote a 10 where it meant to write an 8. And I think that's just the way these cases go. Your honors have cited the blue line of cases, and it's just not typical when there is a sentencing hearing to, instead of appealing, to file a Rule 35 or a Rule 36 based on lack of information that this didn't explain. I don't understand why that is. I mean, is this, this is the concern. I mean, you might say this is the reason why we have concern about the lack of a need to specifically object, right? Because since you've like made some general reference to four years, you've preserved all objections at all time. Instead of, when it says to not change his 10 year sentence or 10 year supervised release, when it was in fact a change, seems like a Scrivener's error to me. And your honor, I, I understand it may be a Scrivener's error. It certainly has the appearance on its face of vindictiveness, which is why we raised a vindictiveness claim. And it may be that, you know, getting to the blue line of cases, your honor, it may also be that the district court did not give a thorough enough understanding, misunderstood what it had done the first time, as the government alludes to in its brief. So there's different things this error could be. And you haven't told us in response to Judge Richardson, I'm satisfied with my answer. All right. Thank you, Mr. Rignell. Yes. We've got some rebuttal time. Mr. Rogers. Good morning. May it please the court. Can you start with the question I ended with your colleague on? So tell me why, you know, your, your job as an AUSA is to, is to help the court. You're an officer of the court. When you, when you get this order and you look at it, it looks a little bit like not changed 10 years when it was previously eight, looks like a Scrivener's error, right? So why, why, why didn't you ask the court to like take a look at this and either provide clarification as to why it needed to be aid or to correct the Scrivener's error? Because the United States does not believe it was a Scrivener's error. That's an alternate argument. There wasn't anything that needed to be corrected. Well, this is a pretty detailed order from Judge Dever and it seems like to me if this were an initial sentencing, he would have really nailed it and in terms of what he needs to say, but it struck me that having gone through all this detail about the history of the case and why he was giving Mr. Whitaker the 240 months, there's never a mention of the pre-remand sentence where he had the eight years of supervised release and it just struck me as odd that to have gone into all this detail but to have left that out does raise a question that seems like that the district court might have overlooked something or been confused because it also noted that the government responded in opposition, which if that means they opposed Mr. Whitaker's request, part of that would have been incorrect or whether that was just the way of saying that they filed the pleading, but it just seems odd to me that you have such a detailed opinion that leaves out that crucial fact. Well, the court impliedly raises it, JA 115 just before the Roman numeral I, that last sentence says, as explained below, the court again reduces Whitaker's sentence to 240 months imprisonment on count five, but denies Whitaker's motion for a further sentence reduction. The court is referring to the rest. The court is effectively saying I'm not giving any less than was given before, but the important thing that defendant is... Wait, wait, wait, wait, wait, I'm sorry. I just don't understand your argument. Your argument is when he refers to further sentence reduction, you read that to encompass supervised release. Yes, Your Honor. But you could also reasonably read it to not cover supervised release, couldn't you? Because on 119, he uses that same language to further reduce his sentence below 240 months or change supervised release, suggesting that further reduce does not include supervised release, right? He uses it separately in those two different places, right? Well, that's where we get to the alternative argument that we made in footnote seven of our brief, but we don't even have to get to that argument because defendant actually points out some very helpful language in the Austin case in which it says that the court has to include information that sheds new light on its decision. Well, we have new light. There was no light before. All we had was two numbers, 240 and eight. The court has chambers that comes along and says, oh, here's what the new light needs to look like. So the court started over, looked at 2010, shed the light for us to see, and we look at this order that goes on at length about the defendant's, for example, offense conduct. It goes into his primary income, how much money he was making, the amount of . . . But counsel, it does do that, but doesn't that argument at least do a lot to read away or ignore our Ovid case? I mean, it seems like we . . . I mean, I think it's a fair question of whether this was any sort of vindictiveness or an oversight, but just as a matter of fact, the supervised release went down for two years, and there was nothing that said, here's why . . . or went up two years because of X, Y, Z. So at a minimum, we got to imply something from there that, okay, I'm giving a more thorough review or whatever, but even if it's just a technical non-vindictive situation, doesn't there need to be something that acknowledges the increase and why? I do not have any case law that I can find that says the district court has to say, well, last time I did this, and now I'm doing that. What the law requires is that there is something in the record. If we look at Alabama, it says any . . . Alabama v. Smith . . . any unexplained change in the sentence is subject to a presumption of vindictiveness. This is an explanation of its sentence. If we look at 119 where it's explaining why it's doing, it's an interesting sentence. If you go about . . . eight lines up. It starts with, Whittaker has . . . Eight lines up from the bottom? Yes, sir. The sentence starts, Whittaker also has performed. Right. The court says, Whittaker also has performed poorly on probation. However, Whittaker has taken numerous positive steps while incarcerated and has no disciplinary infractions. What the court is doing is it's contrasting defendant's probationary behavior and it's contrasting it with its behavior in prison, which makes sense that the court would go back to 2010, look at it and say, you know what? Now that I look at this, defendant really struggles with probation. We need to reflect that a supervised release term will oversee defendant in a way that perhaps eight years didn't. If there had been an extra two sentences in this opinion that said that, I don't think we'd be here in this case. I would agree with that, but I . . . It seems like to me here that despite opposing counsel's argument, it's pretty hard to make a vindictiveness case here, but there seems to be a blue type explanation problem and what you just described, I think, illustrates that. Maybe that shouldn't be the state of the law today. Law professors and law review articles can argue about that or Supreme Court can take it up, but we require a pretty detailed and specific explanation. You just gave that. It was a very good one, but it's just not in this opinion. Right. Well, the blue problem was with its order in 2020. The blue problem isn't the problem here. The problem in these cases is if there's no explanation. The court gives this explanation twice. It mentions the defendant having a problem cooperating on probation. The court is . . . Right, but which way do I take that, right? I could take that two different ways, right? So I could say, listen, he's terrible on probation. Therefore, I'm going to give a longer prison sentence and a shorter probationary sentence, right, because if he's not going to do well on it, he needs to stay in prison because that's going to actually restrain him and that's part of what I'm trying to do, right, incapacitate his criminal activity. Or I could take it in the direction you're saying, which is, well, since he's so bad at it, we should give him more of it. I don't know. I'm not sure whether that's . . . I don't know which way to go on that, right? Like, the fact that he's terrible on probation could justify either lengthening or shortening his supervision, right? I mean, we've all been in courts where district judges say, I'm going to put you back in jail for eight months, but I'm ending supervision for you because you're simply incapable of complying. And so we're going to give you a longer prison sentence as a result of your violation, but then I'm going to end your supervision because it's just never going to work. Well, as Your Honor said previously in this oral argument, that's the nature of discretionary sentencing. Totally fair, but you've got to give the . . . that's the point, right? My point is, we can't infer which of those is the case from the fact that he says he's terrible on probation. We don't know whether the judge thought that means you should get more supervised release or less supervised release. And either of those . . . either of those answers would be supported by the information he gave, right? That's the . . . I think that's the link that Judge Agee is reflecting. He could say either of those, right? And if explained, we would say, great, that is discretionary sentencing. You get to pick. Either way is fine, right? It's a reasonable judgment. But you've got to say. Well, in this case, the court said quite a lot. Probation is not the only thing he mentioned. He is explaining why it is he's doing what he's doing. He does not have to go into an explanation and compare it to what he did in 2020. And the thing that should be our north star here is that the defendant has an extremely high burden for good reason, because vindictiveness is not a term of art. It means something. If we say we can presume that Judge Dever acted vindictively, this is a very serious allegation. So he's got to show . . . If he hadn't picked up on this yet, right? So we're talking about a failure to give a full explanation. And that, for better or worse in this circuit, happens all the time, right? And so we're trying to figure out whether there's enough explanation. And if he had given what you just said, which is he's terrible in probation, therefore he needs more of it, would be done, right? But he didn't make that last link. That's the concern that I've got, at least from my perspective. And it's our argument the court did not have to make that link. A court could just simply say, this is what I'm doing now. The chamber . . . So that argument, counsel, is that if the reason . . . if the explanation for the sentence is reasonable in and of itself, there needs to be no mention of why it's being increased from the prior sentence. It doesn't have to bring that up. I mean, this court . . . That's a pretty . . . Well, I'm sorry. Go ahead and answer. I got a follow-up. I'm sorry. The court can still review the sentence for procedure on substantive reasonableness. If that's part of the court's equation when it comes to substantive reasonableness, well, that's part of this court's equation. But that doesn't mean the district court has to go into an explanation of why it did something in 2020 that was entirely vacated. It's been wiped out. And now the district court is doing what it has to do. It's looking at 2010 and saying, okay, now that I look back, I'm going to shed new light. In fact, I'm going to shed light. There was no light before. And I'm going to explain exactly why I think it's appropriate to reduce the amount. But to say, you know what? 2010, I actually had it right about those ten years. That's entirely appropriate. That's the new light. That would be appropriate if he had said that. He just didn't say that. Yeah. It would be ideal. But it wouldn't be inappropriate. It's not inappropriate for the court to have done something other than that. And because this is, the issue here is not procedural reasonableness. Beyond this, the defendant pointing out this statement of the government's position. The issue here has been dictiveness. And I think we need to come back to that. Because that's what defendant, that's the fight defendant wanted to pick. And it's a very serious fight. Which is why this court has a high standard. Why, let me go back to, I just want to make sure I understand the argument. When the court says that it declines to change his ten-year supervised release, right? I just have a hard time understanding what that could possibly mean. It was eight years before. If he's not changing it, it would be eight. I mean, just, I know you began the argument by saying, oh no, that can't possibly be a Scrivener's error, right? Or like, that's not a Scrivener's error.  He just, he, in the life that we live, that's just like a mistake. If he was saying, I'm not changing it, and then he says ten, I have trouble putting that together. Help me understand how I see that other than just a Scrivener's error? I'm not saying it's impossible for it to be a Scrivener's error. Like I mentioned in footnote seven, we acknowledge that in the alternative, there is this mystery sentence where you have a dependent clause and an independent clause interacting, and it indicates that Judge Dever believed that in 2020, he handed down a ten-year supervised release sentence. Well, let's assume that's the case. The court's saying, I'm not going to change that. In other words, I don't want to go up from that. It's showing the court has no intent to be vindictive. It's not anymore. Let's just assume that for purposes of argument, vindictiveness is off the table. What's the harm in sending this back just to say to Judge Dever, we don't know why you did this. Tell us why you did it. I mean, that's an option that's on the table, but argument would be . . . So I'm asking you, what's the harm in doing that? The harm in doing that is that we have an opinion, an order that we believe is clear enough that the court intended to do what it did, and you have a judge that's being asked again to redo this when the court has done its job. And he has the Fourth Circuit saying, you've made another mistake, when we can't see that mistake here in the way that the defendant is saying. Maybe he didn't make a mistake. Maybe it's just we can't understand why you did what you did. It doesn't mean it's a mistake. I mean, he may have . . . if he'd used the language that you recited a few minutes ago, as I indicated, I don't think we'd be hearing this case. But if we can't tell, don't we usually in that circumstance send it back and tell the district court judge to explain himself or herself so we can understand it? If the court opted to do that, then it would . . . I mean, would it be a miscarriage of justice? No, but in that case, we would ask this court to affirm the judgment, and if the court is inclined to conclude that the district court's decision was influenced by a misunderstanding of what it did in 2020, that the case be remanded solely to address the clarification with respect to the term of supervised release. That would . . . Unitary sentencing, right? So, like, if we send it back, we just send it back, right? We don't get to pick and choose, right? Hadn't we said that repeatedly now that you don't get just to reconsider part of it? Once we send it back, we're sending back the whole thing. Now, all it would mean is he takes the same order. He changes the word change to increase or whatever it is, right? I mean, he could . . . it wouldn't take a lot of work to make that change, but he'd have to do something, right? Therefore, in response to Judge Agee, would it be harmful? Not necessarily. Is it necessary at all? No, it's not, especially, again, getting back to the issue that's here. Defendant didn't argue procedural error. Defendant argued vindictiveness. Vindictiveness, you look in the dictionary, it's not a very polite term. It means spiteful. It means vengeful. So, this is what he said. Like I said, this is the fight he brought to the Fourth Circuit, and it was an unnecessary one when, indeed, the defendant could have simply raised his hand and said, in a motion for reconsideration, Judge Devere, it appears that there has been a scrivener's error or whatever he wanted to bring to the court's attention. And that's why the . . . But isn't it true now, like our case law is like set up for him to sandbag that, right? I mean, it'd be a violation of his obligation to his client if he did it, at some level, because we've told him, you get to sandbag, right? That like, as long as you put at the end of your motion, we want four years of supervised release, you don't ever have to say anything about it, and you get to come here with a preserved error, right? We've told him to sandbag, right? I don't know that the court has told him to sandbag, but I do believe that he can. He can certainly do so, but I do think it makes us pause and say, wait a second, are we really looking at vindictiveness here, where the court very likely had a scrivener's error, or it did exactly what it wanted to, and the defendant is now willing to say, oh, wait a second, now we have a problem when we have a district court that never got a chance to fix it? The burden is high when it comes to vindictiveness. This defendant had to show there was a reasonable likelihood that Judge Dever acted vindictively. The fact that we have had to discuss in so many different ways what he might have been doing leaves us with the question, can we really say there's a reasonable likelihood of vindictiveness here? If defendant had argued that there was true procedural error, perhaps we would be having, or should be having, a different discussion. All he did when it came to procedural error was say that the court misstated the United States position. That's not enough for the remand on a procedural error where the district court didn't even rely on that, and we can see that based on what the court did say. Under Gall, that's not going to be enough. If that's all he's got, this isn't a procedural error, and that's not enough to remand this case, and it certainly isn't enough to find that Judge Dever acted vindictively, or at least that we can presume he did, ever we'd ask this court to affirm the district court. All right. Thank you, Mr. Rogers. Mr. Brignac, you've got some time in rebuttal. Thank you, Your Honor. I will take this court's invitation and say vindictiveness is off the table for purposes of this rebuttal. I will say we did take that very seriously, and we talked about the appearance of it and how it looks to the outside world, and I think that was there, but I think we can spend this five minutes more productively, and yet, Your Honor, I always tell everyone when it comes to appeals, you want to win. The best way to win your appeal is to make the other person have to appeal, so there really was no sandbagging here. This never struck me as appropriate for a Rule 35 error, and we certainly tried to win our cases in front of the sentencing judge. That was not a personal critique of you. Right. Your obligation is to your client. Please don't take that in any way as a critique of you, but you get my point that you have no incentive to raise that at a Rule 35 because you can come to us on a preserved error. Yes, Your Honor. I will say that if there's an error I think I can get fixed without making my client wait nine months and taking the chance of coming up here, there is the incentive, the practical incentive, but I do think Your Honors have all spent 20 minutes— I think he's got a while before we get to the supervised release, right? Like nine months is not a hangup for him, right? Fair enough, Your Honor. Very good point. Your Honors all spent 20 minutes going back and forth with the government about what district court order could have meant, or did it mean this? Could he have implied that? And as Your Honors all realize, that's because the order was procedurally unreasonable. We raise this as vindictiveness, but the Provence case indicates that this court can and should raise procedural error sua sponte. The lack of explanation, and Judge Quattlebaum, I think you were right, we don't often have cases where it goes down to the district court, up here, back down to the district court. So there is a fundamental difference between this case and almost any other, which is we have this intervening 2020 district court opinion, and to not even address that, to not even acknowledge that, to not even give an awareness of that case's existence, is procedural error, especially when he gives those two extra years of supervised release. When you combine that with the mischaracterization of the government's position, that's sort of compounded procedural error. And that matters more in this case than others, because as Your Honor first opened this oral argument by pointing out, the government did have a 5K motion. So in a cooperation sentencing, the position of the United States is more important than it is in other sentencings. The United States explains the cooperation and gives a sentencing reduction recommendation. It's simply more intimately involved because of the nature of cooperation. And Mr. Whitaker really did cooperate. He wore a wire. He was communicating about things he learned in prison. So the United States, when it comes down for this second remand, very much not taking a position, which is rare. In most of these 404s, they do say, please exercise your discretion not to reduce. Not taking a position, I think, spoke to Mr. Whitaker's cooperation and the fact that he may ‑‑ they do think he should have gotten somewhat more of a reduction or at least didn't want to argue for lack of reduction. So it was a more significant procedural error. And the government, I would also just want to end by saying, this court's clearly not going to reach vindictiveness. It does not need to reach vindictiveness to address the question of whether to remand to a different district court judge. The second and third prong of that test, you know, most of the time, there is a remand to a different judge. It's because of the judge got involved in plea negotiations or he heard information he shouldn't have. So you do not need to find vindictiveness. The second and third prong, would reassignment preserve the appearance of justice? Would it waste resources? I think here, considering certainly the reaction my client had to this order and just the fact that he did go up without any explanation, it would preserve the appearance of justice to go to a different district court judge. And because everything involving this 404 motion has all been on the papers, he's had no in-person hearings since his 2010 sentencing. I do not think it would be a duplication of resources out of the ordinary to do that. So for those reasons, Your Honor, we do still argue for the vindictiveness finding, but perhaps more appropriately, do think this case needs to be remanded because the district court's order was procedurally erroneous and we do stand on our request for remand to a different district court judge. All right. Thank you very much. Thank you, Your Honor. We appreciate the argument of both counsel. As you can see, we're still COVID restricted, so we can't come down and greet you in person, but we hope to the next time you're back. So with that, we're going to take a short recess and we'll come back for the rest of the docket.
judges: G. Steven Agee, Julius N. Richardson, A. Marvin Quattlebaum Jr.